Citation Nr: 1532800 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 10-19 060 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California


THE ISSUES

1. Entitlement to an initial rating in excess of 70 percent from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, for posttraumatic stress disorder (PTSD).

2. Entitlement to a total rating based on individual employability due to service-connected disabilities (TDIU) from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999. 


REPRESENTATION

Appellant represented by: Kenneth M. Carpenter, Attorney at Law


ATTORNEY FOR THE BOARD

L. Barstow, Counsel
INTRODUCTION

The Veteran had active military service from September 1968 to April 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision of the VA Regional Office (RO) in San Diego, California.

In pertinent part, a Board decision in December 2013 denied the Veteran's claims for a rating in excess of 70 percent for PTSD and for entitlement to a TDIU for the periods from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999. The Veteran thereafter appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court) insofar as it denied a 100 percent rating and a TDIU for those time periods. In an Order dated in March 2015, the Court granted a Joint Motion for Remand (JMR) by the Veteran and VA General Counsel, which was incorporated by reference, to vacate the Board's decision insofar as it denied an increased rating and a TDIU for those time periods and remand the case for readjudication in accordance with the JMR. 


FINDINGS OF FACT

1. From August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, the Veteran's PTSD resulted in him being demonstrably unable to retain employment.

2. As Board is granting a 100 percent rating for the Veteran's PTSD from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, the issue of entitlement to a TDIU based on unemployability resulting from the Veteran's PTSD for those time periods is moot.



CONCLUSIONS OF LAW

1. From August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, the criteria for a rating of 100 percent for PTSD have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.132, Diagnostic Code (DC) 9411 (1996).

2. There remains no allegation of error of fact or law for appellate consideration of the issue of entitlement to a TDIU from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2002); 38 C.F.R. § 20.204 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

As the Board is granting a 100 percent rating for PTSD for the time periods on appeal and is dismissing the TDIU claim for those same time periods, no discussion of VA's duties to notify and assist is necessary.

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities. The Board determines the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, and the assigned rating is based, as far as practicable, upon the average impairment of earning capacity in civil occupations. 

A distinction must be made between a veteran's dissatisfaction with original ratings and dissatisfaction with determinations on later filed claims for increased ratings. Where there is a question as to which of two ratings should be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. The Court has held that staged ratings are appropriate for initial rating claims when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. 
The Veteran's PTSD is rated as 70 percent disabling from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999. During this appeal, except for these time periods, the Veteran's PTSD is either evaluated as 100 percent disabling or he was in receipt of a TDIU. Consequently, only these time periods remain on appeal. 

During the periods under consideration on this appeal, VA revised the rating criteria for PTSD. The Board will evaluate the Veteran's claim under both the old criteria and the current regulations in order to ascertain which version would accord him the highest rating. Thus, the Board will apply the criteria under the DCs at 38 C.F.R. § 4.132 (1996) (effective February 3, 1988 to November 7, 1996) and at 38 C.F.R. § 4.130 (2014) (effective on November 7, 1996) to the period on or after the effective dates of each of those regulations.

In determining whether the Veteran is entitled to a higher rating, the Board must consider (1) whether an increased rating is warranted under the "old" criteria at any time; and (2) whether an increased rating is warranted under the "new" criteria for PTSD at any time on or after November 7, 1996. The Board must apply only the earlier version of the regulation for the period prior to the effective date of change. Thus, only the "old" regulations apply to periods prior to November 7, 1996, but the Board will apply the more favorable of the "old" and "new" regulations for periods after that date.

Since the Board will apply the most favorable version of the relevant regulations on or after the effective date of those regulations, there is no prejudice to the Veteran. Under the former rating criteria, PTSD was evaluated under 38 C.F.R. § 4.132, DC 9411 (effective before November 7, 1996). A 70 percent rating was warranted where the ability to establish and maintain effective or favorable relationships with people was severely impaired. The psychoneurotic symptoms were of such severity and persistence that there is severe impairment in the ability to obtain or maintain employment. 38 C.F.R. § 4.132, DC 9411 (1996).

A 100 percent rating was warranted where the attitudes of all contacts except the most intimate were so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic symptoms bordering on gross repudiation of reality were present with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. The Veteran was demonstrably unable to obtain or retain employment. Id.

Under the current rating criteria, a 70 percent evaluation is warranted if the evidence establishes there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, DC 9411 (2014). 

A 100 percent evaluation is warranted if the evidence establishes there is total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting oneself or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

The list of symptoms in the rating formula is not intended to constitute an exhaustive list, but rather shows examples of the types and degrees of the symptoms, or their effects, that would justify a particular rating. Accordingly, the evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, VA must consider all symptoms of a claimant's disability that affect the level of occupational and social impairment, including, if applicable, those identified in the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV).

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 

The Global Assessment of Functioning (GAF) is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. 

A GAF score of 51 to 60 is indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with co-workers).

At a January 1988 VA examination, the Veteran reported symptoms of being angry and "getting upset easily." He complained of irritability and "exploding all the time." He reported working at the same job for the last three years. Examination revealed that he was well groomed and casually dressed in clean clothes. Speech was somewhat vague, but goal directed and not pressured. He denied any major delusions and when asked about hallucinations, he stated that he could "see them all the time" and could "see what happened to me in Vietnam." The Veteran reported having nightmares about Vietnam. He reported feeling depressed very often and having difficulty falling and staying asleep. He was oriented to time, person and place. Memory was disturbed for past, recent, and recall. 
A July 1988 treatment record shows that the Veteran had not been employed for two months. An August 1988 evaluation shows that the Veteran felt that trauma related problems had caused him problems with employment and with his relationships. He reported quitting his job of 11 years after a confrontation with another employee and subsequent uproar. Examination revealed that the Veteran's hygiene/clothing were clean. He had good eye contact. He reported sleep interruptions with content nightmares. Mood was sad, guilty, worried and anxious; and affect was depressed and restricted at times of inquiry into combat experiences. There was no observed dysfunctioning on the quality and quantity of speech. The Veteran reported visual and auditory hallucinations, and knew such were not real. He was oriented to person, time, and place. Memory, short and long term, was good. Attention span was normal; insight and judgment were good; and the Veteran was not suicidal or homicidal. A GAF score of 60 was assigned. 

Treatment records dated through October 1988 failed to show that the Veteran was demonstrably able to obtain or retain employment. These records show symptoms such as an anxious, sad, and worried mood, and a restricted affect.

The Veteran's Social Security Administration (SSA) earnings statement shows that he earned $13,300.00 in 1988.

A January 1989 letter from the Veteran's VA physician shows that he had been unable to keep his job as a youth counselor for a non-profit organization. He reported having nightmares, flashbacks, being irritable and explosive, and being violent toward his wife and son. The Veteran reported being detached and unable to feel properly toward his family or to feel warm or close feelings for friends or relations at the work place. The Veteran felt that that and his irritability had been involved in many job losses. Examination revealed that he had scattered and fragmented thoughts, periods of suspiciousness and unreasonable fear of attack, a labile affect, and despondent mood. The Veteran's concentration and focusing abilities were impaired by his degree of anxiety. Thought content showed significant preoccupation with his combat service, mixed guilt and anger reaction, and high degree of survivor guilt. His physician opined that his symptoms had caused a high degree of interpersonal and occupational dysfunction. 

Treatment records dated during the time period of January 1, 1999, through February 1, 1999, again fail to show that the Veteran was demonstrably able to obtain or retain employment. The Veteran's SSA earnings statement shows that he earned $2,806.00 in 1999. His SSA disability records show that his disability was found to have an onset date of February 1, 1999.

Examinations and treatment records throughout this appeal show similar impairment to that shown from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999.

Based on a review of the evidence, the Board concludes that a 100 percent rating is warranted from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999. After reviewing the treatment records and examinations since the award of service connection, the Board is unable to conclude that for the time periods at issue-totaling six months during the more than 20 years since the effective date for the grant of service connection-the Veteran's PTSD did not cause the same level of impairment as it has during the time periods his disability was rated as 100 percent disabling. While the Veteran did have income during 1988 and for the one month in 1999 as evidenced by his SSA earnings statement, the evidence does not show that the Veteran was able to retain employment. As discussed above, a 100 percent rating under the old rating criteria contemplated being demonstrably unable to obtain or retain employment. In light of the Veteran's scant employment history since the award of service connection, the Board is unable to conclude that the Veteran has been able to retain employment. 

In finding that the Veteran has been unable to retain employment, as directed by the JMR, the Board has considered the Veteran's employment history in the context of whether he was able to retain substantially gainful employment. In this case, the fact that the Veteran may have been able to obtain employment during the time periods at issue does not necessarily mean that he was able to retain employment, as evidenced by his overall employment history. When considering the overall impairment shown throughout this appeal, the evidence supports a finding that the Veteran's PTSD rendered him demonstrably unable to retain employment. 

The Board's finding is supported by the January 1989 letter showing that the Veteran's PTSD caused a high degree of occupational dysfunction. Although such letter was written during a time period not at issue, it came from the Veteran's treating VA physician. As such, the Board considers such letter to be indicative of the Veteran's level of functioning during the latter part of 1988 at issue in this appeal. While there is no such letter close in time to the appeal period of 1999 at issue, as already discussed above, the treatment records fail to show that the Veteran was demonstrably able to retain employment. 

In this case, the Board has evaluated the totality of the Veteran's symptoms and resulting impairment and has concluded that his impairment has remained the same throughout this appeal. Consequently, as the Veteran's impairment from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, is equivalent to the impairment shown over the last 20 plus years, the Board reiterates that a 100 percent rating is warranted from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999. 

Accordingly, and based on this evidentiary posture, the Board concludes that the totality of the evidence shows that a 100 percent rating from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, is warranted. 

Furthermore, the rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the disability. 38 C.F.R. § 4.1. The Board notes that in exceptional cases where evaluations provided by the rating schedule are found to be inadequate, an extraschedular evaluation may be assigned which is commensurate with the veteran's average earning capacity impairment due to the service-connected disorder. 38 C.F.R. § 3.321(b). However, the Board believes that the regular schedular standards applied in the current case adequately describe and provide for the Veteran's PTSD symptoms and disability level. Marked interference with employment beyond that contemplated by the schedular criteria has not been shown. The record does not reflect a disability picture that is so exceptional or unusual that the normal provisions of the rating schedule would not adequately compensate the Veteran for his service-connected disability. The evidence does not show that the Veteran's PTSD has resulted in interference with employment or activities of daily life which would warrant an increased rating beyond what is being granted in this decision for this disability.

As regards the Veteran's claim for entitlement to a TDIU from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, for the reasons set forth above, the Board has granted a 100 percent disability rating for the Veteran's service-connected PTSD for these time periods. As the Veteran's claim for a TDIU was based on unemployability resulting from his service-connected PTSD, the Board considers such issue to be rendered moot in light of the full grant above. As such, there remains no allegation of errors of fact or law for appellate consideration of the issue of entitlement to a TDIU from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999. The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. Therefore, the Board does not have jurisdiction to review this claim, and it is dismissed.



ORDER

From August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, a rating of 100 percent for PTSD is granted, subject to the law and regulations governing the payment of monetary benefits.

The appeal of entitlement to a TDIU from August 8, 1988, to January 1, 1989, and from January 1, 1999, to February 1, 1999, is dismissed. 



____________________________________________
MILO H. HAWLEY 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs